MAHLON R. SHANER, PLAINTIFF–APPELLANT, v. HORIZON BANCORP., DEFENDANT–RESPONDENT.

Argued March 13, 1989—Decided August 10, 1989.

*Joseph A. Carmen* argued the cause for appellant.

*Joseph F. Betley* argued the cause for respondent (*Capehart & Scatchard,* attorneys; *Alan R. Schmoll,* of counsel).

*John V. Jacobi,* Assistant Deputy Public Advocate, argued the cause for *amicus curiae* Public Advocate (*Alfred A. Slocum,* Public Advocate, attorney; *John V. Jacobi* and *Richard E. Shapiro,* Director, Division of Public Interest Advocacy, on the brief).

*Peter Van Schaick* submitted a brief on behalf of *amicus curiae* New Jersey Employee Lawyers Association (*Peter Van Schaick,* attorney; *Bennet D. Zurofsky* and *Patricia F. Breuninger,* on the brief).

The opinion of the Court was delivered by

HANDLER, J.

Mahlon R. Shaner, plaintiff, was fired by Horizon Corporation (Horizon), defendant, at the age of fifty-three after working for the corporation for approximately eight years. Shaner claimed that he was discharged because of age. He sued Horizon, asserting wrongful discharge on federal and state statutory grounds, namely, in violation of the Federal Age Discrimination and Employment Act of 1967 and the New

Jersey Law Against Discrimination, as well as on grounds involving the violation of a clear mandate of state public policy. He sought compensatory monetary damages, interest, attorney fees and punitive damages. The defendant denied these allegations, maintaining the plaintiff was an employee at-will and was fired for just cause.

Defendant moved for partial summary judgment, seeking to limit the plaintiff's cause of action to his claim under the state Law Against Discrimination. The trial court granted the motion and dismissed with prejudice the plaintiff's federal claim and his claim of wrongful discharge in violation of state public policy, leaving only the state statutory claim. The trial court then granted defendant's motion that plaintiff's demand for a jury trial on that claim be denied. Following a non-jury trial, the court ruled that plaintiff's discharge was not based on discrimination because of age under the Law Against Discrimination.

Plaintiff appealed, challenging the pretrial order dismissing his claim for a jury trial and the court's determination on the merits. The Appellate Division affirmed both rulings. Plaintiff filed his notice of appeal as of right to this Court. Defendant filed a motion to dismiss the appeal as of right, which this Court denied. The sole issue raised by the plaintiff and before the Court is whether the plaintiff has a constitutional right to a jury trial on his claim for wrongful discriminatory termination on the basis of age under the New Jersey Law Against Discrimination.

I.

The case comes to us on constitutional grounds. It is based on article I, paragraph 9 of the New Jersey Constitution of 1947, which provides that "[t]he right of trial by jury shall remain inviolate." Nevertheless, while plaintiff insists that his right to a trial by jury is constitutional, his cause of action is based on the Law Against Discrimination, which raises initially

the question whether the statute itself expressly or by necessary implication confers the right to trial by jury.

The New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to 10:5–42 (LAD), was first enacted in 1945. It implements the Constitution, which provides:

> No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right ... because of religious principles, race, color, ancestry or national origin. [*N.J. Const. of 1947* art. I, para. 5.]

The Law Against Discrimination provides with greater specificity the following:

> It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, sex ... to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. [*N.J.S.A.* 10:5–12.]

It is this provision that specifies the substantive right that is the basis for plaintiff's cause of action.

The purpose of the LAD is to ban discrimination "because of race, creed, color, national origin, ancestry, age, sex, marital status or because of ... liability for service in the Armed Forces of the United States." *N.J.S.A.* 10:5–3. The LAD, *N.J.S.A.* 10:5–4, pronounces that "the opportunity to obtain employment" constitutes a "civil right." *Fuchilla v. Layman,* 109 *N.J.* 319, 332 (1988). "The clear public policy of this State," reflected in the LAD, "is to abolish discrimination in the work place." *Id.* at 334; *Castellano v. Linden Bd. of Educ.,* 79 *N.J.* 407 (1979). The LAD is concerned with more than the individual victim of discrimination. It recognizes that "discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and functions of a free democratic State." *N.J.S.A.* 10:5–3, *quoted in Fuchilla, supra,* 109 *N.J.* at 334–35.

The LAD contains distinctive substantive and procedural standards that serve to define discrimination causes of action.

These standards not only enumerate the matters that can entail invidious discrimination, such as, in this case, age, but also deal with the critical elements of motive and intent and the effects of discrimination not only on the person claiming to be victimized but also on those similarly situated. *See, e.g., Goodman v. London Metals Exch. Inc.*, 86 *N.J.* 19, 30 (1981). In the context of employment, these standards aid the victims of discrimination by creating a presumption of invidious motive or intent if the claimant can show that an employment practice of the employer has a significant discriminatory impact. *Id.; Peper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 84 (1978); *see also Andersen v. Exxon Co.*, 89 *N.J.* 483, 499–500 (1982) (in handicap-discrimination cases, motive or intent is presumed on showing that claimant is handicapped but capable of doing the job, thus shifting to employer the burden of justifying its treatment of claimant). These standards have been influenced markedly by the experience derived from litigation under federal anti-discrimination statutes. *See Peper v. Princeton Univ. Bd. of Trustees, supra*, 77 *N.J.* at 81 (adopting procedures formulated in *McDonnell–Douglas Corp. v. Green*, 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.*2d 668 (1973), for litigation under Title VII, 42 *U.S.C.* § 2000e–5 (1982)). The LAD's special procedural provisions are designed to identify the existence of discrimination and to encourage the initiation of grievances based on such discrimination. *See Fuchilla v. Layman, supra*, 109 *N.J.* at 345. The procedures accord broad rights of discovery. *Dixon v. Rutgers, The State Univ.*, 110 *N.J.* 432 (1988). They also provide requirements to expedite the resolution of grievances arising from invidious discrimination. These not only serve to vindicate the wrongs suffered by individuals but are designed to discourage and eradicate discrimination in its most pervasive forms. These procedures relate to pleadings, *N.J.S.A.* 10:5–13, 10:5–16, notice to the Division and parties, *N.J.S.A.* 10:5–13, 10:5–15, conciliation, *N.J.S.A.* 10:5–14, and time limitation on actions, *N.J.S.A.* 10:5–18.

The key to the LAD is the remedial authority it confers on the Director of the Division on Civil Rights. The Director is empowered to invoke comprehensive remedies that are commensurate with the Law's overarching purpose of eradicating discrimination. *N.J. Builders, Owners & Managers Ass'n v. Blair,* 60 *N.J.* 330 (1972) (Director has broad power to adopt rules that rationally fulfill Division's responsibilities); *see also David v. Vesta Co.,* 45 *N.J.* 301 (1965) (upheld Legislature's broad exercise of powers to outlaw housing discrimination through LAD). *N.J.S.A.* 10:5–17 sets out the available remedies that the Division of Civil Rights may order if the Director finds that an employer engaged in unlawful discrimination.

> If, upon all evidence at the hearing, the director [of the Division of Civil Rights] shall find that the respondent has engaged in any unlawful employment practice or unlawful discrimination as defined in this act, the director shall state his findings of fact and conclusions of law and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful employment practice or unlawful discrimination and to take such affirmative action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay ... or extending full and equal accommodations, advantages, facilities, and privileges to all persons, as, in the judgment of the director, will effectuate the purpose of this act ... [*N.J.S.A.* 10:5–17.]

The administrative power to fashion remedies is as broad and flexible as needed to "comport[ ] with the preeminent social significance of [the LAD's] purposes and objects." *The Passaic Daily News v. Blair,* 63 *N.J.* 474, 484 (1973). "There can be no disagreement with the basic, oft-repeated precept that the Division on Civil Rights has far-ranging and comprehensive jurisdiction in the field of civil rights," and "[c]onsistent with this embracive authority, the Division has broad and flexible power to combat discrimination." *Castellano v. Linden Bd. of Educ., supra,* 79 *N.J.* at 417 (Handler, J., concurring in part and dissenting in part) (citing *Jackson v. Concord Co.,* 54 *N.J.* 113 (1969); *Fraser v. Robin Dee Day Camp,* 44 *N.J.* 480 (1965); *Jones v. Haridor Realty Corp.,* 37 *N.J.* 384 (1962); *Levitt & Sons, Inc. v. Division Against Discrimination,* 31 *N.J.* 514, appeal dismissed, 363 *U.S.* 418, 80 *S.Ct.* 1257, 4 *L.Ed.*2d 1515

(1960)); *see also Zahorian v. Russell Fitt Real Estate Agency,* 62 *N.J.* 399, 409 (1973) ("statute vests the Director with remedial powers which have been broadly expressed legislatively ... and have been broadly applied judicially."). Attorney's fees are also available as a remedy under the LAD pursuant to *N.J.S.A.* 10:5–27.1. This is a special form of relief designed to encourage those who seek to vindicate the individual as well as societal interests of overcoming discrimination in the exercise of civil rights. *See Urban League of Greater New Brunswick v. Mayor & Council of Cranbury,* 115 *N.J.* 536 (1989); *Singer v. State,* 95 *N.J.* 487 (1984).

It is significant that to the extent traditional legal modes of relief can be invoked in discrimination claims under the LAD, they have been applied in a manner that not only will provide individual redress and compensatory relief, but also will advance the broader societal purposes of the LAD. Thus, monetary awards under the LAD "seek[ ] not only to give redress to the individual who complains, but moreover to eliminate and prevent all such future conduct on the part of the [respondent] by enjoining further discriminatory practices as to all persons." *Jackson v. Concord Co., supra,* 54 *N.J.* at 124–25. . Therefore, the Court has recognized that the Director's broad remedial powers can include the power to grant forms of legal relief such as compensatory damages, *Jackson v. Concord Co., supra,* 54 *N.J.* at 126, as well as incidental damages for pain and suffering or personal humiliation. *Zahorian v. Russell Fitt Real Estate Agency, supra,* 62 *N.J.* at 416. Nevertheless, the administrative award of monetary damages should not be "a primary item" of relief, *id.* at 413, but must be only ancillary to and correlated with the grant of broader remedies, which in combination are "reasonably calculated to eliminate the effects of the discrimination." *Id.* at 416 (paraphrasing *Williams v. Joyce,* 4 *Or.App.* 482, 479 *P.*2d 513, 523 (1972) (interpreting an Oregon anti-discrimination statute similar to that of New Jersey)).

Consistent with its broad reach, the LAD confers on an aggrieved victim of discrimination the option of either filing an administrative complaint with the Director of the Division on Civil Rights or filing a civil action with the Superior Court. *N.J.S.A.* 10:5–13; *see Fuchilla v. Layman, supra,* 109 *N.J.* 319, 336; *Sprague v. Glassboro State College,* 161 *N.J.Super.* 218, 225 (App.Div.1978). These several remedies are complementary. While a claimant may pursue only one remedial route at a time, he or she may seek alternative or successive vindiction. *See, e.g., Hermann v. Fairleigh Dickinson Univ.,* 183 *N.J.Super.* 500, 504–05 (App.Div.), certif. den., 91 *N.J.* 573 (1982).

The right to bring a judicial action as an alternative to administrative relief, as exercised by plaintiff in this case, was expressly authorized by a 1979 amendment to the LAD, *L.*1979, *c.* 404. It specifically provided that

[a]ny complainant may initiate suit in Superior Court under this act without first filing a complaint with the division or any municipal office. Prosecution of such suit in Superior Court under this act shall bar the filing of a complaint with the division or any municipal office during the pendency of any such suit. [*N.J.S.A.* 10:5–13.]

When the LAD was amended to allow judicial relief, the remedies enumerated by *N.J.S.A.* 10:5–17, which had previously applied specifically to the Division's powers, were not amended to apply explicitly to judicial actions. It is clear, however, that a court may grant remedies similar to those provided in *N.J.S.A.* 10:5–27 through its equitable or legal powers. Courts, therefore, exercise an authority that parallels the Division's enumerated administrative powers, which are directed to the rectification of work-place discrimination through a full range of remedies. Thus, awards that include monetary damages as a constituent but incidental aspect of broader remedial relief have long been recognized in judicial actions under the LAD, *see, e.g., Gray v. Serruto Builders, Inc.,* 110 *N.J.Super.* 297, 317 (Ch.Div.1970), just as they are in administrative actions. *See, e.g., Zahorian v. Russell Fitt Real Estate Agency, supra,* 62 *N.J.* at 413–14; *see also Fuchilla v. Layman, supra,* 109 *N.J.* at 346 (Handler, J., concurring) ("[A]ny interpretation of

the [LAD] that makes the initiation of discrimination suits in Superior Court less attractive than administrative proceedings before the Division on Civil Rights must be viewed as a disincentive, frustrating the intended effect of the 1979 amendment [explicitly granting a judicial remedy].")

These considerations underline the point that the judicial cause of action under the LAD is similar in purpose and effect to an administrative action. The judicial cause of action need not alone or literally track the administrative action; indeed, the court actions can allow more extensive individual relief in terms of monetary damages than might otherwise obtain in an administrative proceeding. *See Erickson v. Marsh & McLennan Co., Inc.*, 227 *N.J.Super.* 78, 84–85 (App.Div.1988) (although case involved jury verdict for compensatory and punitive damages, right to jury trial on the discrimination claim was not raised as issue on appeal), certif. granted, 113 *N.J.* 640 (1988).

However, when LAD actions are compared to traditional forms of litigation, they must be viewed more in the nature of an equitable than a legal cause of action. Thus, the equitable powers of a court in a LAD action must encompass those enumerated in the statute, *N.J.S.A.* 10:5–17, such as the power to provide affirmative relief that can "extend ... 'full and equal' accommodations, advantages, facilities, and privileges to all persons, as ... will effectuate the purpose of the [LAD]," and to order changes in the status of "employees," as well as to issue negative restraints to terminate "unlawful employment practices and unlawful discrimination." Such broad and creative remedies exemplify traditional equity powers. *See, e.g., Fleischer v. James Drug Stores*, 1 *N.J.* 138, 150 (1948) ("where equity has rightfully assumed jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of the entire controversy and, except where the jurisdiction of equity depends on the prior establishment of a right at law, settle purely legal rights and grant legal

remedies" (citing *Mantell v. International Plastic Harmonica Corp.*, 141 *N.J.Eq.* 379 (E. & A.1947))).

Moreover, even before the LAD was amended to authorize expressly a judicial action as an alternative remedy, the courts had determined that a party asserting invidious discrimination in the exercise of civil rights was not limited to the administrative remedy provided by the LAD, but could seek judicial relief in the courts as an alternative forum to effectuate the LAD's broad objectives. *See, e.g., Gray v. Serruto Builders, Inc., supra,* 110 *N.J.Super.* at 306–07 (court reasoned that because State Constitution, Article I, paragraphs 1 and 5, barred discrimination on the basis of race, grievant could seek a judicial remedy against landlord for discrimination entailed in the refusal to rent him an apartment on the basis of his race). Thus, when the Legislature codified such decisions in amending the LAD in 1979, the available legislative history shows that the primary reason for doing so was to provide access to a judicial forum in order to reduce the Division of Civil Right's costs and backlog of cases. Governor's Statement on Signing S–3101 (*L.*1979, *c.* 404 § 1); *see Fuchilla v. Layman, supra,* 109 *N.J.* at 346. There is no suggestion, however, that the right to bring a suit in Superior Court was intended to confer a cause of action that would not be fully consistent with the administrative actions under the LAD, or to limit relief only or primarily to conventional legal damages at the expense of broader equitable solutions. The legislative history suggests that in providing an effective judicial cause of action extensive equitable forms of relief would not become incidental to purely legal forms of relief. In this vein, the exercise of a right to a jury trial in conjunction with a LAD-court action would appear inconsistent with the legislative intent. A jury trial with its attendant delays and the inherent limitations of the scope of jury verdicts could be counterproductive in terms of fulfilling the explicit legislative goal of the 1979 amendment of LAD that was to reduce the agency backlog congestion and at the same time provide a judicial alternative that would be comparable to the

administrative action so that the society's war against discrimination would not slacken.

The fact that the 1979 amendment did not deal expressly with the right to trial by jury is also highly indicative of legislative intent not to confer such a right. It is reasonable to believe that if the Legislature intended to confer the right to a jury trial when in 1979 it authorized a complainant to bring an action in Superior Court, it would have expressly so provided in its amendment of the LAD. When conferring a right to a jury trial for newly-created statutory causes of action, the Legislature has a history of doing so by express provision. *See, e.g., N.J.S.A.* 2A:15–56 (labor dispute injunctions); *N.J.S.A.* 2A:62–4, 2A:62–18 (quiet-title actions); *N.J.S.A.* 2A:62–21 (actions to determine the existence and validity of covenants, conditions, agreements, or restrictions in deeds to real estate); *N.J.S.A.* 2A:62–24 (actions to determine title to riparian lands and lands under water); *N.J.S.A.* 3B:12–24 (civil proceedings to determine mental incompetency); *N.J.S.A.* 40:189–3 (actions for abatement of nuisances); and *N.J.S.A.* 45:14B–42 (actions regarding confidentiality of patient information by psychologists); *see also State v. Tenriero,* 183 *N.J.Super.* 519, 521 (Law Div.1981) (plaintiff denied a right to jury trial in action brought under statute that provided Superior Court with jurisdiction over gambling offenses: "[h]ad the Legislature intended otherwise, it would have made provision in the same manner as for the disorderly persons obscenity offense.")

The federal experience with respect to employment discrimination actions is also instructive in our understanding of whether a right to a jury trial must accompany a judicial action enforcing statutory civil rights. Federal courts have also focused on the nature and extent of the court's remedial powers in such actions in resolving this kind of issue. With respect to employment-discrimination cases under Title VII, the Supreme Court has determined that because these statutory remedies are primarily equitable in nature and legal or monetary awards are largely incidental, plaintiffs have no right to a jury trial.

*See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 *U.S.* 366, 375, 99 *S.Ct.* 2345, 2350–51, 60 *L.Ed.*2d 957, 965–66 (1979); *Curtis v. Loether*, 415 *U.S.* 189, 197, 94 *S.Ct.* 1005, 1010, 39 *L.Ed.*2d 260, 268 (1974). Thus, in *Albemarle Paper Co. v. Moody*, 422 *U.S.* 405, 415–16, 95 *S.Ct.* 2362, 2370–71, 45 *L.Ed.*2d 280, 295–96 (1975), the Court specifically determined that there is no right to a jury trial for Title VII claims because such claims invoke the equity powers of the courts. The Court found that because Title VII awards were discretionary insofar as they were restitutionary, they emanate from the exercise of equity rather than legal powers.[1] The Supreme Court observed that the power to grant such relief involved complex decisions pursuant to the exercise of a range of equitable powers, all aimed toward the broader purpose of "mak[ing] persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it is the historic purpose of equity to 'secur[e] complete justice,'...." 422 *U.S.* at 418, 95 *S.Ct.* at 2372, 45 *L.Ed.*2d at 297 (citation omitted). The lower federal courts have consistently denied a right to jury trial under Title VII under the same theory: that backpay awards are discretionary and restitutionary, rather than entitlements pursuant to a specific finding that a duty has been breached. *E.g., Slack v. Havens*, 522 *F.*2d 1091, 1094 (9th Cir.1975); *EEOC v. Detroit Edison Co.*, 515 *F.*2d 301, 308 (6th Cir.1975), vacated and remanded on other grounds, 431 *U.S.*

[1] In *Curtis v. Loether, supra*, 415 *U.S.* 189, 94 *S.Ct.* 1005, 39 *L.Ed.*2d 260, the Supreme Court determined that a plaintiff suing under Title VIII, claiming a violation of the fair housing provisions of the Act, was entitled to a jury trial because the damages sought were "legal" rather than "equitable." It found that monetary relief granted under Title VIII issued as non-discretionary relief pursuant to breach of a legal duty. 415 *U.S.* at 197, 94 *S.Ct.* at 1008, 39 *L.Ed.*2d at 268. However, the Court noted that not all monetary relief is legal relief but may be considered equitable relief if it is discretionary and considered a form of restitution, rather than damages. *Ibid.* The Court specifically noted that the circuit courts have consistently characterized back pay relief under Title VII "as an integral part of an equitable remedy, a form of restitution." *Ibid.*

951, 97 *S.Ct.* 2669, 53 *L.Ed.*2d 267 (1977); *Robinson v. Loril-lard Corp.*, 444 *F.*2d 791, 802 (4th Cir.), cert. dismissed, 404 *U.S.* 1006, 92 *S.Ct.* 573, 30 *L.Ed.*2d 655 (1971); *Dadas v. Prescott, Ball & Turben*, 529 *F.Supp.* 203 (N.D.Ohio 1981); *An–Ti Chai v. Michigan Technological University*, 493 *F.Supp.* 1137, 1144 (W.D.Mich.1980); *Baker v. City of Detroit*, 458 *F.Supp.* 379, 382 (E.D.Mich.1978), aff'd, 704 *F.*2d 878 (6th Cir.1983), on rehearing, 712 *F.*2d 222 (6th Cir.1983), cert. den., 464 *U.S.* 1040, 104 *S.Ct.* 703, 79 *L.Ed.*2d 168 (1984). The language of *N.J.S.A.* 10:5–17 describing the Director's remedial powers, *supra* at 437–438, is similar to the federal remedies provided under Title VII.[2] There is, moreover, some indication that LAD in conferring a judicial cause of action, *see Grigoletti v. Ortho Pharmaceutical Corp.*, 226 *N.J.Super.* 518, 529 (App. Div.), certif. granted, 113 *N.J.* 640 (1988), further strengthened the parallel between judicial actions under the LAD and those under Title VII.

In sum, the LAD provides a distinctive cause of action arising from unlawful employment practices and unlawful discrimination in employment. The overarching goals of the LAD are not only vindication for aggrieved individuals victimized by discrimination. Protection for other persons similarly situated and the eradication of invidious discrimination in the exercise of civil rights are also paramount concerns of the LAD. The LAD confers broad and extensive remedial powers to fulfill these goals and to counteract the practices and effects of such

---

[2] *U.S.C.* § 2000e–5(g) describes the powers available to a court when it finds that an employer has engaged in unlawful employment practices:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

unlawful practices and discrimination. These administrative powers are analogous to the equity powers of the courts. Monetary awards that may be made under the LAD have a distinctive equitable cast. They may compensate a complainant for injuries, and may thus be similar to the compensatory damages traditionally available in actions at law rather than in equity. The remedial power to affix monetary awards, however, is tailored to redressing the special, individualized effects of discrimination, such as humiliation and mortification, and thus serve also as a deterrent against future discrimination.

Judicial actions brought under the LAD are intended to effectuate its purposes and goals. The relief available in such judicial actions is wholly comparable to and is at least as broad and far-reaching as that which is available in administrative actions under the LAD. We are satisfied that the LAD cause of action is not readily analogous to conventional legal actions. Accordingly, we conclude that the New Jersey Legislature did not expressly or by implication create a conventional action at law, nor did it intend to confer the right to a jury trial when it amended the LAD to permit a judicial remedy.[3]

## II.

The plaintiff contends that the jury trial right in conjunction with his action brought under the LAD is conferred by the State Constitution. As noted, article I, paragraph 9 of the

---

[3]Plaintiff maintains that LAD claims have been tried before juries in some counties. He cites to *Terragrossa v. Supermarkets General Corp.*, Docket No. L–022390–87 to support this allegation. Plaintiff fails to specify whether there were other claims before the court that would entitle the parties to a jury trial. In other cases involving a LAD claim, the plaintiff brought other claims that implicated a right to a jury trial and no issue was raised concerning the right to a jury trial. *E.g., Erickson v. Marsh & McLennan Co. Inc., supra,* 227 *N.J.Super.* 78 (action alleging wrongful discharge, sex discrimination under *N.J.S.A.* 10:5–12 and libel); *Jackson v. Consolidated Rail Corp.,* 223 *N.J.Super.* 467 (App.Div. 1988) (action for wrongful discharge under LAD joined with claims under State and federal Constitutions, and violation of state public policy and federal civil rights).

Constitution proclaims that the right to trial by jury shall remain inviolate. It is asserted that this constitutional right applies to a cause of action under the LAD and cannot be curtailed by legislative actions.

The provision preserving the right of a trial by jury has appeared in each of New Jersey's Constitutions. In construing this provision, the Court has been consistent in denying a right to jury trial unless that right existed prior to the adoption of the State Constitution. *In re LiVolsi*, 85 *N.J.* 576 (1981); *Montclair v. Stanoyevich*, 6 *N.J.* 479 (1951); *Steiner v. Stein*, 2 *N.J.* 367 (1949). However, in each of the decisions in which the Court has expressed this view, it has referred to a different State Constitution, a difference that need not be resolved in this case. Thus, in *In re LiVolsi, supra*, 85 *N.J.* at 587, the Court stated that the right to a jury endured only if it existed at the adoption of the 1947 Constitution; in *Montclair v. Stanoyevich, supra*, 6 *N.J.* at 485, the Court pointed instead to the 1766 Constitution; and in *Steiner v. Stein, supra*, 2 *N.J.* at 378, the Court referred to the 1844 Constitution.

In both *Steiner v. Stein, supra*, and *In re LiVolsi, supra*, the Court employed a historical analysis to determine whether a cause of action existed at common law in a form that involved the right to a trial by jury. This entailed an examination of whether the kinds of issues and remedies sought in a current action with respect to which the jury trial right was claimed had historically been cognizable in either equity or law. Both cases involved attorney's fees. In *Steiner, supra*, 2 *N.J.* at 372, the Court rejected the characterization of the action against the attorney simply as contractual, an action cognizable in law, and instead, focused on the presence of a fiduciary relationship between the attorney and client to find that the lower court would be employing equitable remedies if necessary. The Court, therefore, categorized the action as equitable and denied any right to jury trial. Similarly, in *In re LiVolsi, supra*, 85 *N.J.* at 588, the Court reviewed the validity of arbitration committees to settle fee disputes between attorneys and clients,

a practice that was authorized by a Rule of Court, *Rule* 1:20A, and again turned to the history of using equitable remedies to settle such disputes to justify denial of a right to jury trial. Neither of these cases, however, involved newly-created statutory rights.

*Montclair v. Stanayevich, supra,* 6 *N.J.* 479, was the first decision by this Court to find no right to jury trial existed for newly-created statutory rights. This case involved a petty criminal offense before a magistrate involving violation of a zoning ordinance. The Court found that convictions before magistrates for small criminal offenses were unknown at common law, and therefore the defendant had no right to a jury trial. Since then, lower courts have been consistent in denying a right to jury trial for newly-created statutory causes of action. *See N.J. Sports & Exposition Auth. v. Del Tufo,* 210 *N.J.Super.* 664 (Law Div.1986), aff'd, 230 *N.J.Super.* 616 (App. Div.1989) (no right to jury trial in stockholders' action to determine fair value of their shares because proceeding was statutory rather than contractual); *Manetti v. Prudential Property & Casualty Ins. Co.,* 196 *N.J.Super.* 317, 320–21 (App.Div.1984) (no right to jury trial for statutorily-created "PIP" benefits, which are granted according to principles of statutory construction, not contract); *State v. Tenriero, supra,* 183 *N.J.Super.* 519 (no right to jury trial for gambling offenses under statute giving jurisdiction to Superior Court); *Van Dissel v. Jersey Cent. Power & Light Co.,* 181 *N.J.Super.* 516 (App. Div.1981) (no right to jury trial for inverse condemnation action since this right arises under state Constitution and statute, and is, therefore, foreign to the common law), certif. den., 89 *N.J.* 409 (1982), granted and vacated on other grounds, 465 *U.S.* 1001, 104 *S.Ct.* 989, 79 *L.Ed.*2d 224, on remand, 194 *N.J.Super.* 108, 122–23 (App.Div.) (conclusion on jury issue undisturbed), certif. denied, 99 *N.J.* 186 (1984); *Peterson v. Albano,* 158 *N.J.Super.* 503 (App.Div.1978) (no right to jury trial in summary dispossess action because it is statutory), certif. den., 78 *N.J.* 337 (1978); *Quinchia v. Waddington,* 166 *N.J.Super.* 247, 249

(Law Div.1979) (no right to jury trial to recover from Unsatisfied Claim and Judgment Fund since right was new substantive right that vested by statute and was foreign to the common law; "[a]bsent legislative mandate, the right of trial by jury is confined to those matters in which it existed under the common law."); *Kugler v. Banner Pontiac–Buick, Opel, Inc.*, 120 *N.J. Super.* 572 (Ch.Div.1972) (no right to jury trial for prosecution under Consumer Fraud Act where statutory action was "completely unknown" to common law).

Other states that follow a similar historical approach have divided on whether their state anti-discrimination statutes have codified pre-existing common-law causes of action that historically conferred a right to jury or have created wholly new substantive rights for the purpose of deciding whether parties have a right to jury trial. In *Murphy v. Cartex Corp.*, 377 *Pa.Super.* 181, 546 *A.*2d 1217 (Super.Ct.1988), and *South v. Toledo Edison Co.*, 32 *Ohio App.*3d 24, 513 *N.E.*2d 800 (Ohio Ct.App.1986), the courts found the causes of action were foreign and unknown to the common law, and hence denied any right to jury trial. In contrast, other courts found that since its courts had previously recognized common-law causes of action for discrimination actions, the parties were entitled to a jury trial. *See Schafke v. Chrylser Corp.*, 147 *Mich.App.* 751, 383 *N.W.*2d 141 (1985) (holding there was a right to jury trial for violation of statute prohibiting age discrimination); *Smith v. University of Detroit*, 145 *Mich.App.* 468, 378 *N.W.*2d 511 (1985) (plaintiff bringing discrimination claim entitled to jury trial on claim for damages with separate factual determinations by trial court on equitable claim); *Murphy v. American Home Prods. Corp.*, 136 *A.D.*2d 229, 527 *N.Y.S.*2d 1, 3–4 (1988) (in statutory age-discrimination case, plaintiff entitled to a jury trial because plaintiff sought only legal remedy of monetary relief, even though statute created a "new" cause of action).

In the federal courts, the remedy rather than the central cause of action is primarily, if not exclusively, determinative of entitlement to a jury trial. Thus, in *Curtis v. Loether, supra,*

415 *U.S.* 189, 94 *S.Ct.* 1005, 39 *L.Ed.*2d 260, the defendant demanded a jury trial in a private civil action in which plaintiff alleged that defendant had discriminated against her in violation of Title VIII of the Civil Rights Act of 1968 by refusing to rent an apartment to her on the basis of her race. In implying the right to trial by jury the Supreme Court observed: "the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law." *Id.* at 196, 94 *S.Ct.* at 1009, 39 *L.Ed.*2d at 267 (citations and footnotes omitted).

The Supreme Court relied on similar reasoning to conclude in *Lorillard v. Pons*, 434 *U.S.* 575, 583, 98 *S.Ct.* 866, 871, 55 *L.Ed.*2d 40, 47–48 (1978), that there is a right to a jury trial in an ADEA case in which monetary relief alone is sought. The Court stressed the express statutory reference to the term "legal relief" in imputing to Congress the specific intent to allow a jury trial on claims seeking an award for unpaid wages. However, as earlier noted, a LAD action is more akin to a Title VII action, with respect to which it is generally accepted that equitable rather than legal remedies are granted, and litigants do not have a right to a jury trial. *See Novotny, supra,* 442 *U.S.* at 375, 99 *S.Ct.* at 2350–51, 60 *L.Ed.*2d at 965–66. See discussion, *supra* at 443–446.

In the present case, plaintiff seeks compensatory monetary damages, interest, attorney's fees, and punitive damages. He stresses that he is not seeking reinstatement or any equitable remedies. The plaintiff claims, therefore, that the only relief sought is "legal," entitling him to a trial by jury.

As noted, we have eschewed a focus solely on the remedy sought and have espoused a more eclectic view of the standards that serve to characterize the essential nature of a cause of action in giving meaning and scope to the right to a jury trial conferred by article I, paragraph 9 of the New Jersey Constitution. *See, e.g., In re Livolsi, supra,* 85 *N.J.* at 587. We consider the nature of the underlying controversy as well as the

remedial relief sought in determining whether the cause of action has been historically primarily equitable or legal in nature. *See* 2 M. Schnitzer and J. Wildstein, New Jersey Rules Service, A IV—1256–60. Thus, in *In re Livolsi, supra,* 85 *N.J.* at 588–90, the Court recognized that equity courts have jurisdiction over attorney-client fee disputes because the issues inherent in remedying a breach of the attorney-client relationship, such as the reasonableness of fees, existence of a confidential relationship, and the superior position of the attorney, all implicate equitable concerns. *See Steiner v. Stein, supra,* 2 *N.J.* at 372. We have also held that where actions created by statute have distinctive features with respect to substantive and procedural standards that would render them virtually unknown to the common law, there is no right to jury trial. *See, e.g., Manetti v. Prudential Property & Casualty Ins. Co., supra,* 196 *N.J.Super.* 317; *Van Dissel v. Jersey Cent. Power & Light Co., supra,* 181 *N.J.Super.* at 516; *Kugler v. Banner Pontiac-Buick Opel, Inc., supra,* 120 *N.J.Super.* 572.

The plaintiff stresses, nevertheless, that he is seeking only legal relief and that this should be determinative of his entitlement to a jury trial. However, even though plaintiff contends that he seeks only monetary relief, he claims attorney's fees, a distinctive statutory and equitable form of compensation. *See, e.g., Urban League of Greater New Brunswick v. Mayor and Council of Cranbury, supra,* 115 *N.J.* 536; *Singer v. State, supra,* 95 *N.J.* 487 (1984). More important, his action is brought under the LAD and it is doubtful that plaintiff can divest the court of its statutory jurisdiction and authority to consider and effectuate broader forms of relief.

Plaintiff also argues that employment discrimination on the basis of age should be viewed as a tort or contract claim cognizable at common law, and that even as a LAD claim, it has a common-law basis; therefore, he has a right to a jury that cannot be abrogated or superseded by the Legislature's decision to codify such actions.

We fully appreciate that article I, paragraph 9 of the Constitution "guaranteed jury trials in order to safeguard the right against attrition, either by the Legislature or the courts, in cases where it existed at the time of the adoption of the Constitution of 1776." *Banner Pontiac–Buick, supra,* 120 *N.J.Super.* at 581. We acknowledge that other courts have found that a grievance based on discrimination constitutes or is similar to a tort action. *See Wilson v. Garcia,* 471 *U.S.* 261, 276–77, 105 *S.Ct.* 1938, 1947–48, 85 *L.Ed.*2d 254, 266–67 (1985) (claim under 42 *U.S.C.* § 1983 is to be treated as a tort action for personal injuries for purposes of deciding applicable statute of limitations); *Phillips v. Smalley Maintenance Servs.,* 435 *So.*2d 705 (Ala.1983) (claim of sexual harassment is a tort claim on theory that it constitutes an invasion of privacy).

Employment discrimination can take the form of wrongful termination that may, in a particular context, constitute a tort or breach of contract. *See Leese v. Doe,* 182 *N.J.Super.* 318, 321 (Law Div.1981) (statute of limitations for tortious injury to rights of another applied to employment discrimination claims under the LAD). Supplementing this point, plaintiff argues that *Pierce v. Ortho Pharmaceutical Corp.,* 84 *N.J.* 58, 72 (1980), is authority for the proposition that an at-will employee who has been terminated in violation of a clear mandate of public policy may maintain an action in tort or contract, and that a claim under the LAD is this kind of action. The Court there observed that such an action could be viewed as based on contract if "predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy," or as a tort if based on the breach of "an employer's duty." *Ibid.*

Nevertheless, while other causes of action based on employment discrimination may implicate tort or contract principles and engender conventional legal remedies, and even share elements in common with a LAD-based employment discrimination claim, *see, e.g., Jackson v. Consolidated Rail Corp., su-*

*pra,* 223 *N.J.Super.* at 483, the LAD cause of action does not either codify or co-opt these common-law causes of action. *See, e.g., Erickson v. Marsh & McLennan Co., Inc., supra,* 227 *N.J.Super.* at 84–85. Indeed, the LAD preserves other legal bases that might exist on which a discrimination claim may be brought. *N.J.S.A.* 10:5–27 provides:

> Nothing herein contained shall bar, exclude, or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination.

Therefore, LAD claims do not supplant claims that might be cognizable by our courts in contract or tort for wrongful discharge from employment based on age discrimination.

As earlier noted, however, the LAD provides a distinctive statutory cause of action that is not the equivalent in purpose or function to a common-law cause of action. The LAD encompasses special substantive standards and procedures that are uniquely designed to further broader constitutional and legislative goals. Available relief under the LAD is predominantly equitable in nature; it may be both negative and affirmative, individualized and general, retroactive and prospective. Even when monetary damages are awarded, they can afford full compensatory redress for the individual as well as be specially tailored both for the individual and to members of the class exemplified by the individual claimant. Therefore, the existence of a unique, strong, and effective statutory cause of action under the LAD itself dispels the inference that it is the functional equivalent of a *Pierce*-type action. Because an action under the LAD is distinctively oriented to the achievement of the broad objectives of that law, we are not persuaded that "the action involves rights and remedies of the sort typically enforced in an action at law" and that there is "no functional justification for denying the jury trial right." *Loether, supra,* 415 *U.S.* at 195, 94 *S.Ct.* at 1009, 39 *L.Ed.*2d at 267.

Moreover, it should be noted that one of the reasons underlying the decision by this Court to provide a tort or contract

action to at-will employees who are wrongfully discharged is that such an employee has no other effective or realistic means through which to vindicate a wrong and secure redress for an employer's wrongful conduct. *Pierce v. Ortho Pharmaceutical Corp., supra,* 84 *N.J.* at 71. The common law grows and expands in response to perceived needs to serve the ends of justice. This consideration has compelled some courts to refuse as a matter of sound policy to create a common-law tort or contract action when an adequate alternative remedy exists. *See, e.g., Wolk v. Saks Fifth Ave., Inc.,* 728 *F.*2d 221 (3rd Cir.1984) (statutory remedy in Pennsylvania Human Relations Act precludes extension of common law to provide cause of action); *cf. Giardina v. Bennett,* 111 *N.J.* 412, 420 (1988) (a statutory remedy need not be expanded to achieve legislative purpose if an adequate alternative common-law remedy already exists). Because the LAD provides a victim of age discrimination with a remedy, it might be unnecessary to recognize or create a *Pierce*-type action to vindicate substantially the same rights and provide similar relief.

By parallel reasoning, a plaintiff in appropriate circumstances could pursue an independent action, such as in *Pierce,* to vindicate particular interests in addition to or aside from those sought to be protected by a LAD action. The LAD does not prevent such an alternative. *N.J.S.A.* 10:5–27; *see, e.g., Lally v. Copygraphics,* 85 *N.J.* 668, 670–71 (1981) (state tort action existed for discharge in retaliation for filing workers' compensation claim even though statute barring such discharge provided administrative remedy).

However, we are satisfied that a LAD action is not the equivalent of other common-law tort or contract actions for wrongful employment termination. The LAD itself "does not indicate that the Legislature intended discrimination to be treated as a tort." *Fuchilla v. Layman, supra,* 109 *N.J.* at 333. Moreover, there is no suggestion in the statute itself, its legislative history, or the judicial treatment of actions under the statute that the Legislature intended that a termination of

employment based on discrimination under the LAD should be considered a breach of an implied contractual obligation. *See Pierce v. Ortho v. Pharmaceutical Corp., supra,* 84 *N.J.* at 72.

Furthermore, we do not perceive the denial of a right to trial by jury as inimical to the policy goals of the LAD. While a jury award arguably could exceed the monetary damages that would otherwise accrue to the aggrieved plaintiff, other forms of relief, such as injunctive orders, reinstatement, back pay, humiliation awards, special damages, and counsel fees, might not be forthcoming to the detriment of the policy goals of the LAD. Further, juries' focus on such compensatory awards may divert courts from fashioning the kind of continuing affirmative relief that is most conducive to rectifying employment injustice, and thereby may disserve the objectives of the LAD. Greenbaum, "Toward a Common Law of Employment Discrimination", 58 *Temp.L.Q.* 65, 68–72 (1985).

In sum, the LAD provides a statutorily-created judicial cause of action that augments the administrative remedy. The judicial enforcement of a LAD claim is directed to effectuate the purposes and policies of the New Jersey Law Against Discrimination, not those that undergird our common-law tort and contract doctrines. We conclude that LAD actions brought in courts cannot be equated to actions cognizable at common law involving traditional legal issues, and therefore the plaintiff bringing an action under the LAD has no right to jury trial.

### III.

Finally, plaintiff claims that in addition to whether a discharge based on age discrimination is cognizable by the arguments under the common law, it is recognized as a constitutional cause of action, and by implication, confers the right to a jury trial. We are not persuaded, the Constitution, we have noted, prohibits discrimination "because of religious principles, race, color, ancestry or national origin." *N.J. Const. of 1947* art. I, para. 5. The LAD, which implements the Constitution, goes

further: it also prohibits employment discrimination based on gender and age. Nevertheless, *N.J.S.A.* 10:5–2 and *David v. Vesta Co., supra,* 45 *N.J.* 301, indicate that the LAD attempts to fulfill provisions of the Constitution. In *Davis v. Vesta Co.,* the Court commented:

> The New Jersey Constitution, *Article* I, *par.* 5, forbids the denial of any civil right by discrimination on the basis of religious principles, race, color, ancestry or national origin. The [LAD] declares that it is an exercise of the police power in fulfillment of that constitutional guarantee of civil rights. [*Id.* at 312 (footnotes omitted).]

Clearly, while the LAD implements the Constitution, it does not displace it. In *Peper v. Princeton Univ. Board of Trustees, supra,* 77 *N.J.* 55, this Court found that an employee who could not bring her discrimination claim under the LAD for technical reasons was still assured a judicial remedy under the equal-protection clause originating in the 1844 Constitution. However, in that decision, this Court indicated that this was not a common-law cause of action, but one of constitutional origin. There was no suggestion that the constitutional cause of action was the functional equivalent of a common-law lawsuit or that it conferred a right to a trial by jury.

Moreover, this Court has not addressed whether discrimination on the basis of age directly violates the New Jersey Constitution. It may be that like discrimination on the basis of gender, age discrimination would deprive an older person the right to acquire property that a younger person possesses, thereby constituting a violation of the equal-protection guarantees of our Constitution. The Court, however, need not address this issue. The plaintiff has brought this action under the LAD asserting only that the LAD claim is comparable to or the equivalent of a constitutional claim but has failed to indicate in what way this would engender a right to a jury trial.

## IV.

We thus construe our Constitution as conferring a right to a jury trial only when the type of action was known at common

law as one that would involve a jury trial. The LAD creates a unique statutory right that is focused not only on the protections of an individual's entitlement to be free from discrimination in the exercise of civil rights, but also on the attainment of overriding goals of constitutional, legislative and public policy— the correction and elimination of all forms of invidious discrimination. The issues that are implicated in a judicial action under the LAD seeking to effectuate such individual interests and social goals are essentially equitable in nature. The courts' power under the LAD to invoke remedies that will prevent and discourage the recurrence of discrimination against persons similarly situated to an aggrieved plaintiff remains a central feature of such an action. It is one that entails the exercise of equity jurisdiction. Hence, a party seeking to vindicate a right to be free from discrimination does not have an entitlement to a jury trial, even if seeking only a legal remedy.

We accordingly conclude that an action under the Law Against Discrimination does not entail the right to a trial by jury. The judgment below is affirmed.

*For affirmance*—Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN—5.

*For reversal*—None.