742 A.2d 550

INSURANCE COMPANY OF NORTH AMERICA, PLAINTIFF, v. ANTHONY AMADEI SAND & GRAVEL, INC., AND ANTHONY AMADEI, DEFENDANTS–APPELLANTS, AND DENNIS DUBIN, DAVID EHRLICH, GLOUCESTER ENVIRONMENTAL MANAGEMENT SERVICES, INC., JACK M. LISS, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, RICHARD H. WINN, TOWNSHIP OF GLOUCESTER, GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, THE HOME INSURANCE COMPANY AND FIREMAN'S FUND INSURANCE COMPANY, DEFENDANTS, AND AETNA CASUALTY & SURETY COMPANY, DEFENDANT–RESPONDENT.

Argued September 27, 1999—Decided December 22, 1999.

*John A. Yacovelle, Jr.,* argued the cause for appellants (*Mr. Yacovelle* and *John A. DeFalco,* attorneys).

*Peter E. Mueller,* argued the cause for respondent (*Harwood Lloyd,* attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

The primary issue presented in this appeal is whether the right to trial by jury attaches to a declaratory judgment action brought by an insurance company claiming that its insured is not entitled to coverage for environmental remediation. The case began as a jury trial but, after the parties rested, the trial court removed the case from the jury and entered judgment for the insured. The Appellate Division reversed, concluding that the insurer is entitled to a jury trial and that there are disputed issues of material fact that must be decided by a jury.

We granted certification, 158 *N.J.* 73, 726 *A.*2d 937 (1999), and now reverse. We hold that an action by an insurer against its insured for a judgment declaring that its policy does not provide coverage for indemnification for future environmental clean-up costs is essentially an action for specific performance, to which a right to trial by jury does not attach.

## I.

On July 17, 1969, Gloucester Township in Camden County (Gloucester) entered into a contract with defendant Anthony Amadei Sand & Gravel, Inc. (AS & G) to operate the Gloucester landfill known as Environmental Management Services, Inc. (GEMS). Defendant Anthony Amadei (Amadei) and his now deceased partner Sidney Liss personally guaranteed the contract. In return,

AS & G was permitted to conduct a sand and gravel excavation business at the GEMS landfill. Amadei had no previous training in hydrology, nor any landfill operating experience. Amadei claimed that the operation of the landfill was a "carry-over operation," whereby AS & G simply continued the operations and practices that were previously in existence. The contract obligated AS & G to obtain public-liability insurance and provide an indemnification bond in favor of Gloucester.

AS & G operated the landfill from 1969 until 1975. During that time, Amadei allowed numerous parties to dump chemical liquid waste in the landfill, both as loose liquid, and in sealed steel drums. AS & G received permission from Gloucester and the New Jersey Department of Health to accept such waste. In 1970, the Bureau of Solid Waste Management informed Gloucester that liquid waste in the form of paint sludges and thinners could be dumped in the GEMS landfill. Less than a month later, the Bureau rescinded that approval after two inspectors observed a fire at the landfill.

Also in 1970, Amadei sought approval from the newly created New Jersey Department of Environmental Protection (DEP) to operate as a solid-waste disposal facility. In his registration statement, Amadei acknowledged that he was accepting "chemicals (liquid or solid)" and "waste oil." On August 11, 1970, Amadei received approval from the DEP to continue operating the landfill as a solid-waste disposal facility.

The DEP approval lasted approximately one month. On September 13, 1970, a tanker truck that was disposing oil became stuck in the landfill and failed to shut off its disposal valve. The tanker's oil dispersed in one area and washed into a nearby stream. As a result of that incident, the DEP rescinded its prior approval and prohibited AS & G from depositing in the landfill any chemicals, including oils, greases, septic tank cleanings, and sewer plant sludge.

At approximately the same time, residential neighbors of the landfill obtained an injunction enjoining the dumping of any oils,

chemicals, or liquids, with the exception of water, in the landfill. Amadei interpreted the injunction as restricting only the dumping of loose liquids and continued to accept sealed containers of waste. At one point Amadei attempted to prevent a chemical company from dumping drummed waste at the GEMS landfill, but the then New Jersey Public Utility Commission (PUC) ordered him to accept the drums. Notwithstanding the order from the PUC, neighbors of the landfill returned to court claiming that the injunction had been violated. Amadei was not cited for violating the injunction until 1974, despite the fact that the landfill was frequently inspected in 1973, and drummed waste was clearly visible.

Also in 1974, Aetna Casualty & Surety Company (Aetna) issued AS & G two insurance policies that are at the center of the coverage issue involved in this appeal. Specifically, Aetna issued a $500,000 per occurrence primary policy and a $5,000,000 excess policy effective October 18, 1974 through October 18, 1975. The policies insured AS & G for losses due to bodily injury or property damage arising out of an "occurrence." An "occurrence" was defined as "an accident, including continuous or repeated exposure to conditions which result in bodily injury or property damage which is neither expected nor intended from the standpoint of the insured." The policies also contained pollution-exclusion clauses, which excluded coverage for bodily injury or property damage resulting from the non-accidental discharge of pollutants. AS & G continued its operations at least until after the expiration of the Aetna policies.

In 1983, as a result of the environmental pollution caused by the GEMS landfill, the DEP and several of the landfill's neighboring landowners initiated lawsuits seeking cleanup costs from AS & G and GEMS. The litigation was split into two phases: Phase I concerned issues related to the landfill closure, while Phase II concerned groundwater contamination.

During the pendency of that litigation, in May 1986, the Insurance Company of North America (INA), another insurer of AS &

G and GEMS, filed a declaratory judgment action seeking a determination that it had no obligation to indemnify AS & G and GEMS for claims arising out of their operation of the GEMS landfill. INA joined Aetna as a party, seeking contribution because of the two policies Aetna issued to AS & G for the 1974–75 policy year. Aetna filled a cross-claim seeking a declaratory judgment that under the 1974–75 policies, Aetna had no obligation to defend or indemnify AS & G or Amadei against INA's claims. The gist of Aetna's complaint was that the environmental damage was not an "occurrence" as defined in its policies and, alternatively, that the pollution-exclusion clauses applied. Both contentions required a determination of whether Amadei intended or expected the environmental damage that ensued from the operation of the landfill.

In 1989, the parties settled Phase I of the underlying litigation for $32,500,000. Extensive legal maneuvering by all parties continued until 1995, at which point INA amended its complaint dismissing all parties except Amadei, AS & G, Gloucester and Aetna. Eventually, the matter proceeded to trial before a jury on September 18, 1995. On the first day of trial, the court dismissed INA's declaratory judgment action because it had entered into settlement negotiations with Gloucester and Amadei. Therefore, the only remaining coverage claim was Aetna's declaratory judgment action against Amadei and AS & G.

On September 21, 1995, after all the evidence had been presented, the trial court removed the case from the jury and entered judgment in favor of Amadei and AS & G. The court provided alternative grounds for its decision. First, the court ruled that the issue whether the 1974–75 policies obligated Aetna to indemnify and defend AS & G and Amadei did not implicate the right to a jury trial. The court then found that the environmental remediation was an "occurrence" as defined by the policies, and the pollution-exclusion clauses did not apply. Alternatively, the court treated the matter as if a motion for judgment had been made at the end of the evidence pursuant to *Rule* 4:40–1. After drawing

inferences in Aetna's favor, the trial court concluded that a reasonable jury could not find that Amadei intended or expected to cause the environmental damage.

Two significant events transpired between the trial court's decision on September 21, 1995 and March 1, 1998 when the appellate oral arguments were presented. First, on September 27, 1996, Phase II (groundwater contamination) of the underlying litigation settled for $30,000,000. Second, on May 12, 1997, this Court decided *In re Environmental Insurance Declaratory Judgment Actions*, 149 *N.J.* 278, 693 *A*.2d 844, holding that the right to trial by jury does not attach to a declaratory judgment action by an insured against an insurer to compel indemnification for future environmental clean-up costs.

Thereafter, in an unpublished opinion, the Appellate Division on June 2, 1998 ruled that the trial court improperly denied Aetna's right to a jury trial. First, the panel determined that Aetna was entitled to a jury trial on the issues of coverage and whether the pollution-exclusion clauses under the 1974–75 policies applied. The panel limited the non-jury requirement of *In re Environmental Insurance* to cases in which an insured, not an insurer, seeks to compel indemnification for future environmental clean-up costs. Second, the panel found that there were disputed issues of material fact that should have been decided by a jury. Consequently, the panel concluded that a directed verdict was improper.

## II.

Defendants Amadei and AS & G make a twofold argument. First, they contend that the Appellate Division improperly exceeded the scope of its appellate review "by journeying outside the record to consider facts, not presented at trial, which were incorrect." Second, they contend that the Appellate Division erred in its interpretation of *In re Environmental Insurance* to require a jury trial when the insurer rather than the insured seeks a declaratory judgment under an environmental insurance policy. Aetna responds that this case is not analogous to an action for

specific performance and, therefore, *In re Environmental Insurance* is not controlling. It maintains that because it was entitled to a jury trial, the trial court could not decide disputed issues of material fact.

█ The threshold question is whether the Court's holding in *In re Environmental Insurance* applies to a case, such as this one, in which an insurer institutes an action seeking a declaratory judgment of non-coverage for future environmental remediation. If *In re Environmental Insurance* applies, then Aetna may not have a right to have a jury decide disputed factual issues. If *In re Environmental Insurance* does not apply, then it becomes necessary to determine, as the Appellate Division did, whether a rational factfinder could find that the 1974–75 policies did not provide coverage. *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

## A.

█ The Seventh Amendment to the United States Constitution preserves the right to trial by jury in the federal courts in civil cases recognized under the common law in 1791. *Parklane Hosiery Co. v. Shore*, 439 *U.S.* 322, 333, 99 *S.Ct.* 645, 652, 58 *L.Ed.*2d 552 (1979). However, that right is not guaranteed in civil matters tried in the "sovereign states." *Minneapolis & St. Louis R.R. v. Bombolis*, 241 *U.S.* 211, 217, 36 *S.Ct.* 595, 596, 60 *L.Ed.* 961, 963 (1916); *Morin v. Becker*, 6 *N.J.* 457, 462, 79 *A.*2d 29 (1951). Therefore, if Aetna has a right to a trial by jury, it must arise under a statute or our State Constitution. *Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 435–36, 561 *A.*2d 1130 (1989).

█ Article I, Paragraph 9 of the 1947 New Jersey Constitution guarantees that "[t]he right of trial by jury shall remain inviolate." *N.J. Const.*, art. 1, ¶9. But "in civil matters the constitutional right to a jury trial is not absolute." *Brill, supra*, 142 *N.J.* at 537, 666 *A.*2d 146. Only those actions that triggered the right of a jury trial that predated our State Constitutions, and

those that were created anew with enactment of New Jersey's 1776 Constitution, the 1844 Constitution, or the 1947 Constitution serve as the basis for that constitutional right today. *State v. One 1990 Honda Accord,* 154 *N.J.* 373, 377–78, 712 *A.*2d 1148 (1998); *State v. Anderson,* 127 *N.J.* 191, 207, 603 *A.*2d 928 (1992). Generally, the New Jersey Constitution protects the right of trial by jury in legal, but not equitable, actions. *In re Environmental Insurance, supra,* 149 *N.J.* at 291, 693 *A.*2d 844; *Steiner v. Stein,* 2 *N.J.* 367, 379, 66 *A.*2d 719 (1949). "In determining whether a case is primarily legal or equitable, courts must look to the historical basis for the cause of action and focus on the requested relief." *Weinisch v. Sawyer,* 123 *N.J.* 333, 343, 587 *A.*2d 615 (1991); *see also Shaner, supra,* 116 *N.J.* at 447–55, 561 *A.*2d 1130.

"Ordinarily, an action for the declaration of parties' rights under an insurance policy is considered to be a contractual obligation cognizable in a court of law and, therefore, generally subject to trial by jury." *In re Environmental Insurance, supra,* 149 *N.J.* at 299, 693 *A.*2d 844. However, *In re Environmental Insurance,* interpreting the Uniform Declaratory Judgments Act (*N.J.S.A.* 2A:16–50 to –62), held that the right of trial by jury does not attach to a declaratory judgment action by an insured against an insurer to compel indemnification for future environmental clean-up costs. *Id.* at 287, 693 *A.*2d 844. We reasoned that a declaratory judgment action to compel indemnification for future clean-up costs is "sufficiently like an action for specific performance" because "[a]n award of money damages . . . would be inadequate." *Id.* at 293–94, 693 *A.*2d 844. We noted that "[r]emediation is a form of equitable relief that can require continuing supervision." *Id.* at 300, 693 *A.*2d 844. Thus, the nature of the action and the relief sought argued against allowing jury trials in the environmental remediation context.

We expressly limited the holding of *In re Environmental Insurance* to "declaratory judgment actions for insurance coverage for the recovery of future environmental remediation costs." *Id.* at 298, 693 *A.*2d 844. In the present case the insurer (Aetna)

seeks a declaratory judgment that it does not have to indemnify or defend the insured (Amadei & AS & G) for clean-up costs arising out of the GEMS landfill. This is the "flip-side" of the issue presented in *In re Environmental Insurance*. Here, we have an insurer seeking to prove the absence of environmental coverage rather than an insured trying to prove the existence of coverage. We did not, however, envision that the right to a jury depended on a "race" to the courthouse steps. Regardless of whether the insured or the insurer institutes the declaratory judgment action, the purpose of the litigation is the same: a declaration of whether coverage exists for environmental remediation. The issues framed in such an action make it inappropriate for jury consideration because of the uncertainty regarding potential damages, and thus, the inadequacy of the potential remedy at law. *Id.* at 294–95, 693 *A.*2d 844.

Stated differently, an action brought by an insurer seeking a declaration of non-coverage in the environmental remediation context implicates the same concerns as an action brought by the insured seeking coverage for environmental remediation. In either factual matrix, the essential determination is whether the insurer must indemnify the insured for future, uncertain remediation costs. The difference between the factual situation in *In re Environmental Insurance* and the one presented here is that in this case, the insurer filed the complaint. The right of trial by jury is not so malleable that its applicability can be affected by who first files a complaint. *Cf. Beacon Theatres, Inc. v. Westover,* 359 *U.S.* 500, 504, 79 *S.Ct.* 948, 953, 3 *L.Ed.*2d 988 (1959) (noting, in an antitrust suit, the Seventh Amendment right to trial by jury cannot be circumvented by an opposing party simply filing a declaratory judgment complaint first). The right to trial by jury depends on the nature of the relief sought rather than on whether the party seeking affirmative relief undertakes to prove a negative (non-coverage) or a positive (coverage).

■ We hold, therefore, that an action by an insurer or an insured seeking a declaratory judgment of non-coverage or cover-

age respectively for future environmental remediation costs does not implicate the right of trial by jury.

## B.

Next, we must focus on whether Aetna's declaratory judgment action involved only liquidated future amounts. Believing that the damages were liquidated, the Appellate Division concluded that Aetna's claim of non-coverage was legal rather than equitable, thereby entitling it to a jury trial. Specifically, the panel distinguished *In re Environmental Insurance* by stating: "This was not an action seeking insurance coverage. Rather, it was an action by an insurer seeking a legal determination that no coverage existed and it did not have to contribute to the $62.5 million in settlement." The panel concluded that "this was not a case about future environmental remediation costs. The exposure was known and established." Apparently, in making that determination the panel relied on the $30,000,000 Phase II settlement.

As noted previously, Phase II of the settlement did not occur until one year after the trial ended. It is well settled that an appellate court's review of a case is confined to the record made in the trial court. *R.* 2:5–4(a); *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974).

At the time of trial, the amount of potential damages due to groundwater contamination, a significant portion of the underlying environmental remediation case, was not known or established. Thus, when the trial was conducted, the case involved a determination of whether Aetna had to indemnify Amadei and AS & G for unliquidated environmental remediation costs. The fact that Phase I, the landfill portion, had been settled before trial began in the declaratory judgment action, did not convert the trial into an action involving liquidated damages. As we observed in *In re Environmental Insurance*, a court of equity may exercise ancillary jurisdiction over claims for costs already incurred if "those claims grow out of and are germane to the declaratory action for specific performance." *Supra*, 149 *N.J.* at 301, 693 *A.*2d 844. We

conclude, therefore, that the Appellate Division erred in concluding that a jury trial was required because the damages were liquidated. Because Aetna did not have a right to a jury trial, the trial court properly performed its function as the ultimate factfinder. *See In re LiVolsi,* 85 *N.J.* 576, 590 n. 12, 428 *A.*2d 1268 (1981) ("In purely equitable matters ... there is no right to a jury even if both parties want one.").

## III.

Finally, Aetna argues that it deserves a new trial because the trial court "prejudged" the facts. Specifically, Aetna relies on the following statement made by the trial judge, after denying Aetna's request for summary judgment, and originally denying Gloucester's motion for a bench trial:

> But having denied your motion for summary judgment, because I do believe there's a serious question of fact if anything, you want me to say it, frankly, from what I've read there is no question that Amadei didn't know a darn thing.... [B]ut if I were going to decide the question, I would decide it adverse to you and in favor of Amadei based on what I've seen.

Our review of the record convinces us that Aetna received a fair trial. Amadei had no formal training in hydrology or landfill operating experience. He never attempted to hide the fact that chemical waste was being dumped at the GEMS landfill, and in fact, requested and received approval from the State and the town numerous times to accept such waste. Although reasonable minds could differ, the trial court believed that Amadei never intended to cause the environmental damage. That determination by the trial court is supported by the evidence. *Rova Farms, supra,* 65 *N.J.* at 483–84, 323 *A.*2d 495.

## IV.

The judgment of the Appellate Division is reversed, and the judgment of the trial court is reinstated.

O'HERN, STEIN, and LONG, JJ., concurring.

Considering ourselves bound by the Court's disposition in *In re Environmental Insurance Declaratory Judgment Actions,* 149

*N.J.* 278, 302, 693 *A.*2d 844 (1997), we concur in the Court's opinion and judgment reversing the Appellate Division and reinstating the judgment of the Law Division.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO—7.

*Opposed*—None.