NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5684-11T4

ALLSTATE NEW JERSEY INSURANCE
COMPANY, ALLSTATE INSURANCE
COMPANY, ALLSTATE INDEMNITY
COMPANY, ALLSTATE PROPERTY
AND CASUALTY INSURANCE COMPANY,
ALLSTATE NEW JERSEY PROPERTY
AND CASUALTY INSURANCE COMPANY
and ENCOMPASS INSURANCE, f/k/a
CONTINENTAL INSURANCE COMPANY,
and COMMERCIAL INSURANCE
COMPANY OF NEWARK, NJ,

> APPROVED FOR PUBLICATION
>
> October 9, 2013
>
> APPELLATE DIVISION

     Plaintiffs-Respondents,

v.

GREGORIO LAJARA; PEDRO GONZALEZ;
MILEYDIS T. DIAZ a/k/a MILLY
DIAZ; AWILDA D. RODRIGUEZ a/k/a
AWILDA D. GONZALEZ; KENNETH J.
VIAFORA; JOSE ORLANDO HERNANDEZ;
FRANCISCA HERNANDEZ; FRANCISCO
CABA; AQUALINA RAMOS; ASHRAF Y.
AZIR; MUHAMMAD A. SHAMSHAIR;
MICHAEL C. GOLOWSKI; ELVIA BEDOYA;
NYDIA MARTINEZ; NEREDA ZUNIGA;
ALEXANDRA GALLEGOS; BIBARS KAGHDOU,
D.C.; STEPHEN LOMANTO, D.C.; DAVID
STEPHENS, D.C.; THOMAS J. BONACUSO,
D.C.; MICHAEL CARLESIMO, D.C.;
BRYAN SIEGEL, D.C.; KEITH
LEWANDOWSKI, D.C.; WEI JU; LUCY
LIU; JIANMIN LI, a/k/a JIAN MIN
LI; SHAN S. NAGENDRA, M.D.;
ALEKSANDR LEVIN, M.D.; MANOJ D.
PATHARKAR, M.D.; ALFRED REZK
TAWADROUS, M.D.; HOWARD KESSLER,
M.D.; NATALIO DAMIEN, M.D.; DAVID
WALKER, ESQ.; MEDICO MANAGEMENT

CO., INC.; UNION COLLECTIONS, LLC;
PLAINFIELD MEDICAL MANAGEMENT,
INC.; SPINAL ADJUSTMENT CENTER,
P.C. f/k/a SPINAL ADJUSTMENT
CENTER, INC.; RAHWAY SPINAL INJURY
P.C. f/k/a RAHWAY SPINAL CENTER
CORP; ADVANCED SPINAL CARE, P.C.;
MILLENNIUM TOTAL HEALTH, P.C.;
ALEVE CHIROPRACTIC, P.C.; IN-LINE
CHIROPRACTIC, P.C.; BAYVIEW HEALTH,
P.C. a/k/a BAYVIEW HEALTH SERVICE,
P.C.; BOUND BROOK CHIROPRACTIC,
P.C.; NEW WAVE CHIROPRACTIC, P.C.;
ABSOLUTE CHIROPRACTIC, P.C.; BACK
PAIN P.C.; AM PAIN CARE, P.C.;
ACUPUNCTURE ACADEMY P.C.; TCM
ACUPUNCTURE, P.C.; AMERICAN
ACUPUNCTURE ACADEMY, P.C.; CONVERY
MEDICAL GROUP, P.C.; RARITAN PAIN
MANAGEMENT AND REHAB CENTER, P.C.;
ASBURY MEDICAL AND REHABILITATION
P.C.; PAIN MANAGEMENT ASSOCIATES
OF CENTRAL JERSEY, P.A.; BEST
HEALTH MEDICAL, P.C.; PERTH AMBOY
HEALTH CARE, LLC d/b/a "PERTH
AMBOY DIAGNOSTIC IMAGING"; LIBERTY
SUPPLIES, L.L.C.; K-MED SERVICES,
INC.; PRESTIGE MEDICAL SUPPLIES,
LLC; THERAPEUTIC DEVICES, INC.,

       Defendants-Respondents,

and

A.P. DIAGNOSTIC IMAGING, INC. and
DR. HARSHAD PATEL,

       Defendants-Appellants.

_____

       Argued April 30, 2013 — Decided  October 9, 2013

       Before Judges Messano, Lihotz and Ostrer.

A-5684-11T4

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-4091-08.

Carl A. Salisbury (Kilpatrick Townsend & Stockton, LLP) argued the cause for appellants.

Thomas O. Mulvihill argued the cause for respondents Allstate New Jersey Insurance Company, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Encompass Insurance, f/k/a Continental Insurance Company, and Commercial Insurance Company of Newark, NJ (Pringle Quinn Anzano, P.C., attorneys; Mr. Mulvihill, on the brief).

The Law Office of Jeffrey Randolph, LLC, attorneys for respondents Plainfield Medical Management, Pedro Gonzalez and Awilda D. Rodriguez a/k/a Awilda D. Gonzalez, join in the briefs of appellants.

Bubb Grogan & Cocca, LLP, attorneys for respondents Shan Nagendra, M.D., Convery Medical Group, P.C., and Raritan Pain Management and Rehab Center, P.C., join in the briefs of appellants.

Archer & Greiner, P.C., attorneys for respondents Dr. Manoj Patharkar and Pain Management Associates of Central Jersey, P.A., join in the briefs of appellants.

The opinion of the court was delivered by

OSTRER, J.A.D.

On leave granted, defendants appeal from the trial court's order (1) granting plaintiffs' motion to withdraw their jury

3                                                    A-5684-11T4

demand in their action under the Insurance Fraud Prevention Act (Act), N.J.S.A. 17:33A-1 to -30; and (2) striking defendants' jury demand. The Act is silent on the right to trial by jury. We therefore must determine whether the Act implied that right, or whether the Constitution's right to trial by jury, N.J. Const. art. I, par. 9, encompasses a private action under the Act.

After considering the Act's plain language, its legislative history, and the legislative intent, and applying well-settled principles of statutory construction, we conclude the Act does not create a right to a jury trial. Also, as the equitable nature of the statutorily created right to relief was unknown at common law before adoption of the State Constitution, we conclude the Constitution does not guarantee a right to a trial by jury. We therefore affirm the trial court's order.

I.

Given the purely legal nature of the question before us, the pertinent facts may be briefly stated. Plaintiffs alleged they paid $8.2 million in personal injury protection (PIP) benefits under the Unsatisfied Claim and Judgment Fund Law (UCJFL), N.J.S.A. 39:6A-1 to -91, as a result of violations of the Act. The forty-two count complaint included as defendants individual physicians and chiropractors; medical and

chiropractic practices; management companies of medical practices; medical equipment companies; attorneys; and unlicensed individuals.

Among their allegations, plaintiffs asserted that Gregorio Lajara, who was neither a licensed physician nor a chiropractor, directed a scheme to defraud plaintiffs. He allegedly did so, in part, by controlling and effectively owning chiropractic facilities, which plaintiffs alleged violated the law. Plaintiffs alleged various defendants performed services in violation of professional regulations; billed for various services performed by unlicensed persons; engaged in unlawful fee-splitting; knowingly and intentionally concealed facts concerning services provided; billed for services and equipment not actually provided, or medically unreasonable or unnecessary; failed to charge co-pays; paid persons who intentionally caused accidents in order to generate fraudulent bills; and paid kickbacks to attorneys who referred clients.

The complaint sought a declaratory judgment that plaintiffs were not obligated to pay PIP benefits to defendants; disgorgement of sums already paid to defendants; imposition of a constructive trust and equitable lien on defendants' assets until they disgorged the sums sought; and damages allowed under the Act.

Plaintiffs initially demanded a jury trial. However, after answers were filed, plaintiffs moved for leave to withdraw their prior demand. Defendants opposed the motion and demanded a jury trial, some of them for the first time, having omitted the demand from their answers. The Commissioner of Banking and Insurance, who had earlier intervened in the suit, moved to strike the jury demand as it related to the Commissioner's claims. See N.J.S.A. 17:33A-7d (authorizing the Commissioner to join in an insurance company's private action, in order to recover civil penalties authorized by N.J.S.A. 17:33A-5).

Judge Kenneth J. Grispin granted plaintiffs' motion, and struck defendants' jury demand. Defendants sought leave to appeal, which another panel granted.

Renewing arguments they presented to the trial court, plaintiffs urge us to find an implied jury trial right under the Act, just as the court found an implied jury trial right under the analogous Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -109, in Zorba Contractors, Inc. v. Housing Authority of Newark, 362 N.J. Super. 124 (App. Div. 2003). In response, plaintiffs distinguish Zorba, supra, based on differences between the relief available under the CFA and the Act. They also argue that the inherently equitable nature of relief authorized by the Act compels a non-jury trial. They rely on our prior holding

that actions under the Act by the Commissioner, as opposed to private parties, are not subject to a jury trial right, given the restitutionary, and hence, equitable nature of relief available to the Commissioner. State v. Sailor, 355 N.J. Super. 315, 323-24 (App. Div. 2001).

                                II.

                                A.

We apply a de novo standard of review to the trial court's determination that there does not exist a right to trial by jury. See id. at 320 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366 (1995)).

At the outset we note that those defendants who omitted a jury demand in their answers did not waive their right to a jury trial. In instances where a jury trial is permitted, a defendant is entitled to rely on a plaintiff's demand, notwithstanding that, generally, a party who neglects to timely demand a jury waives his right to do so. R. 4:35-1(c). Once one party demands a jury trial on all issues, "the waiver provisions of subsection c of the rule [4:35-1] cannot be the basis for denying a jury trial to a party who has not demanded such a trial." 500 Columbia Tpke. Assocs. v. Haselmann, 275 N.J. Super. 166, 170 (App. Div. 1994). Consequently, trial by jury could be "dispensed with only by consent of all the parties

or their counsel," including that of plaintiff. <u>Ibid.</u> <u>See also</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, comment 1.1 on <u>R.</u> 4:35-1 (2014) ("Once demanded by any party, a trial by jury can be dispensed with only by consent of all parties. Paragraph (d) expressly so provides."). On the other hand, a court may grant a party's late request to withdraw a jury demand over an adversary's opposition if the court finds there exists no statutory or constitutional right to a jury trial.

B.

Turning to the issue before us, we start with the undisputed premise that the Act does not expressly grant a jury trial right. In that respect, it is distinct from numerous enactments in which the Legislature has both created a new statutory cause of action, and expressly provided a right to trial by jury.

> When conferring a right to a jury trial for newly-created statutory causes of action, the Legislature has a history of doing so by express provision. <u>See, e.g.</u>, <u>N.J.S.A.</u> 2A:15-56 (labor dispute injunctions); <u>N.J.S.A.</u> 2A:62-4, 2A:62-18 (quiet-title actions); <u>N.J.S.A.</u> 2A:62-21 (actions to determine the existence and validity of covenants, conditions, agreements, or restrictions in deeds to real estate); <u>N.J.S.A.</u> 2A:62-24 (actions to determine title to riparian lands and lands under water); <u>N.J.S.A.</u> 3B:12-24 (civil proceedings to determine mental incompetency); <u>N.J.S.A.</u> 40:189-3 (actions for abatement of nuisances); and <u>N.J.S.A.</u> 45:14B-42 (actions

> regarding confidentiality of patient information by psychologists); see also State v. Tenriero, 183 N.J. Super. 519, 521 (Law Div. 1981) (plaintiff denied a right to jury trial in action brought under statute that provided Superior Court with jurisdiction over gambling offenses: "[h]ad the Legislature intended otherwise, it would have made provision in the same manner as for the disorderly persons obscenity offense.")
>
> [Shaner v. Horizon Bancorp., 116 N.J. 433, 443 (1989).]

At this point, we review the plain language of the Act as it will weigh heavily in determining whether the Act impliedly requires a jury trial, or creates a cause of action and right to relief subject to the constitutional right to trial by jury.

The Act "interdicts a broad range of fraudulent conduct." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 172 (2006). However, "the Legislature . . . did not codify common law fraud but rather supplemented that action because, standing alone, it had proven to be insufficient in combating and deterring insurance fraud." Id. at 174. The Act does not require proof of a showing that the maker of a false statement intended that the other party rely, the other party did reasonably rely, and suffered damages. See id. at 174-75 (noting that the elements of legal fraud are: a material representation of a present or past fact, made knowing it is false, and intending the other party rely on it, resulting in the party's reasonable reliance

and resulting damages).  Rather, a violation of the Act is more akin to equitable fraud, which does not require proof of knowledge of falsity or "an intention to obtain an undue advantage."  <u>See</u> <u>Jewish Ctr. of Sussex Cnty. v. Whale</u>, 86 <u>N.J.</u> 619, 624-25 (1981).[1]  However, even equitable fraud requires proof of detrimental reliance.  <u>Ibid.</u>  The Act does not.

It is a violation if a person or practitioner:

> (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy or the [UCJFL], P.L.1952, c. 174 (C.39:6-61 et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

> (2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the [UCJF] or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the [UCJFL], P.L.1952, c. 174 (C.39:6-61 et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim[.]

> . . . .

> (4) Prepares or makes any written or oral statement, intended to be presented to

---

[1] Negligent misrepresentation also requires proof of detrimental reliance and resulting damages.  <u>Kaufman v. i-Stat Corp.</u>, 165 <u>N.J.</u> 94, 109-10 (2000).

> an insurance company or producer for the purpose of obtaining:
>
> . . . .
>
> (b) an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract[.]
>
> [N.J.S.A. 17:33A-4a(1), (2), and (4).]

A violation of paragraphs (1), (2), or (4)(b) may occur without any intent the insurer rely, or proof the insurer reasonably relied and was damaged.

The law also penalizes the concealment or knowing failure "to disclose the occurrence of an event which affects any person's . . . right or entitlement to [an] insurance benefit or payment" or the amount thereof. N.J.S.A. 17:33A-4a(3). This also need not rise to legal fraud. See Strawn v. Canuso, 271 N.J. Super. 88, 105 (App. Div. 1994) (stating that fraud by concealment is "[n]ondisclosure of a material fact where there is a duty to speak."), aff'd, 140 N.J. 45, 49 (1995); Berman v. Gurwicz, 189 N.J. Super. 89, 93-94 (Ch. Div. 1981) (stating that claim for fraud by concealment lies where there is duty to disclose to correct a previous statement or where there is a special relationship), aff'd o.b., 189 N.J. Super. 49, 50 (App. Div.), certif. denied, 94 N.J. 549 (1983).

The statute also makes it a violation to misstate a person's principal place of residence for the purpose of obtaining automobile insurance. <u>N.J.S.A.</u> 17:33A-4a(4)(a). Although the violator must intentionally present the statement to the insurer, the Act does not require proof that the person knew the statement was false. <u>Ibid.</u> The Act also makes it a violation for a person to assist or effectively facilitate another person's violation of the Act. <u>N.J.S.A.</u> 17:33A-4b, and -4d. It is also a violation for a person or practitioner to knowingly benefit from the proceeds of another person's violation of the Act. <u>N.J.S.A.</u> 17:33A-4c.

The Act as originally adopted authorized the Commissioner to bring a civil action to recover penalties for each violation of the Act, to be determined by the court subject to the Act's monetary limits.[2] <u>L.</u> 1983, <u>c.</u> 320, § 5 (codified at <u>N.J.S.A.</u> 17:33A-5); <u>see also</u> <u>Merin v. Maglacki</u>, 126 <u>N.J.</u> 430, 440 (1992) (holding that the penalty may be imposed for each false

---

[2] The amount per civil penalty originally was not to exceed $2,500 for the first violation, $5,000 for the second violation, and $10,000 for each subsequent violation. <u>L.</u> 1983, <u>c.</u> 320, § 5 (codified at <u>N.J.S.A.</u> 17:33A-5a). In 1987, the Legislature increased the penalties to their present amounts of $5,000, $10,000, and $15,000, respectively. <u>L.</u> 1987, <u>c.</u> 358, § 5 (codified as amended at <u>N.J.S.A.</u> 17:33A-5a). The penalties now apply both to administrative actions and civil proceedings brought by the Commissioner. <u>L.</u> 1997, <u>c.</u> 151, § 5 (codified as amended at <u>N.J.S.A.</u> 17:33A-5b, and -5c).

12                                        A-5684-11T4

statement, as distinct from each false claim).  The statute also empowered the court to assess court costs and reasonable attorney's fees.  L. 1983, c. 320, § 5 (codified at N.J.S.A. 17:33A-5).

In 1997, the Legislature broadened the Commissioner's powers by authorizing him or her, in an administrative proceeding, to determine whether there was a violation, and levy penalties.  Significantly, the Commissioner is also empowered administratively to "order restitution to any insurance company or other person who has suffered a loss as a result of a violation."  L. 1997, c. 151, § 4 (codified as amended at N.J.S.A. 17:33A-5c).  A respondent may seek a hearing before the Office of Administrative Law (OAL).  Ibid.  The Commissioner may then seek enforcement in a summary proceeding pursuant to the penalty enforcement law, N.J.S.A. 2A:58-10 to -12.  Ibid.

The Act also authorizes insurers "damaged as the result of a violation" to bring a civil action "to recover compensatory damages."  N.J.S.A. 17:33A-7a.  The Act, as amended in 1997, states that such damages "shall include reasonable investigation expenses, costs of suit and attorneys fees."  L. 1997, c. 151, § 5 (codified as amended at N.J.S.A. 17:33A-7a).  As originally enacted in 1983, the law stated damages "may include" such elements.  L. 1983, c. 320, § 7.  Now, damages shall be trebled

"if the court determines that the defendant has engaged in a pattern of violating this act." N.J.S.A. 17:33A-7b. "Pattern" was not defined in the Act until 1997; the word now means "five or more related violations" where "related" means the violations involve the "same victim" or "same or similar actions" by the violator. L. 1997, c. 151, § 2 (codified as amended at N.J.S.A. 17:33A-3).

An insurer must notify the Commissioner when it brings a civil action. The Commissioner may then intervene and seek penalties and cost recovery. N.J.S.A. 17:33A-7d. However, there is no explicit provision allowing an insurer to intervene in an administrative proceeding brought by the Commissioner, notwithstanding the Commissioner's power to seek restitution of the insurer's losses.

The Act does not expressly address the right to a jury trial in civil actions brought by the Commissioner or an insurer. However, as noted, the Act permits the Commissioner to administratively levy a penalty and order restitution, and litigate such an order before the OAL if the order is contested. Likewise, the Act expressly states that a court shall determine whether a person or practitioner has engaged in a pattern of violating the act. N.J.S.A. 17:33A-7b.

C.

Defendants ask us to find that the Act implies a right to a jury trial. Alternatively, we must consider whether, even absent any statutorily implied right, the Constitution guarantees a jury trial. We consider the statutory question first, given our reluctance to address constitutional questions unless necessary. See O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240 (1993). Based on well-settled rules of statutory construction, we decline to find by implication a right that does not exist in the statute's plain language, nor is compelled by the legislative history or the intent of the statute.

In interpreting a statute, "our overriding goal must be to determine the Legislature's intent." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 586 (2013) (JCP&L) (internal quotation marks and citation omitted). We begin with the statute's plain language, and look beyond that only if the Legislature's intent cannot be derived therefrom. Id. at 587 (citations omitted). "We turn to extrinsic interpretative aids in search of legislative intent when the statute is ambiguous, leading to more than one plausible interpretation; it leads to an absurd result inconsistent with any legitimate public policy objective; or it is at direct odds with an overall statutory

15

scheme." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012) (citing DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)).

"[A] court may not 'presume that the Legislature intended something other than that expressed by way of the plain language." JCP&L, supra, 212 N.J. at 586 (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). We may not "rewrite a plainly-written enactment[.]" O'Connell, supra, 171 N.J. at 488. As noted, the Legislature has demonstrated the ability to assure a right to a jury trial in numerous statutes; yet it was silent on the subject in the Act. "When the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." In re Plan for Abolition of Council on Affordable Hous., 214 N.J. 444, 470 (2013) (internal quotation marks and citation omitted). We may not "engraft onto [a] statute a[] . . . provision that the Legislature pointedly omitted. . . . We are charged with interpreting a statute; we have been given no commission to rewrite one." Murray, supra, 210 N.J. at 596.

Although our courts have sometimes found implied provisions — such as implied repealers, or implied rights of action — we have been reluctant to do so. See, e.g., R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271 (2001) ("New Jersey courts have been reluctant to infer a

statutory private right of action where the Legislature has not expressly provided for such action."); <u>In re Comm'r of Ins.'s Issuance of Orders</u>, 137 <u>N.J.</u> 93, 99 (1994) (stating "there is a strong presumption in the law against implied repealers and every reasonable construction should be applied to avoid such a finding") (citation omitted).

The Legislature is empowered to confer a right to a jury trial where it otherwise would be unavailable. <u>JCP&L</u>, <u>supra</u>, 212 <u>N.J.</u> at 590. However, the <u>JCP&L</u> Court quoted with approval our statement, "'When the Legislature wants to provide for the right to a jury trial, it has done so by express provision.'" <u>Ibid.</u> (quoting <u>Sailor</u>, <u>supra</u>, 355 <u>N.J. Super.</u> at 322). "Thus, in <u>Sailor</u>, it was observed that 'since 1951, the right to a jury trial for newly created statutory causes of action has been denied unless the statute so provides.'" <u>Ibid.</u> (quoting <u>Sailor</u>, <u>supra</u>, 355 <u>N.J. Super.</u> at 320). As the <u>Shaner</u> Court recognized, and the <u>JCP&L</u> Court reaffirmed, in the absence of an express provision, our courts have consistently denied a right to a jury trial for newly created statutory causes of action.[3] The Court

---

[3] <u>See</u> <u>Shaner</u>, <u>supra</u>, 116 <u>N.J.</u> at 448 (citing <u>N.J. Sports & Exposition Auth. v. Del Tufo</u>, 230 <u>N.J. Super.</u> 616 (App. Div. 1989) (affirming denial of jury trial right in stockholders' action to determine fair value of their shares); <u>Manetti v. Prudential Prop. & Cas. Ins. Co.</u>, 196 <u>N.J. Super.</u> 317, 320—21 (App. Div. 1984) (denying jury trial right involving
(continued)

held that the Legislature's silence is "highly indicative" of an intent not to confer a jury trial right. Shaner, supra, 116 N.J. at 443. With respect to civil actions by the Commissioner under the Act, we held "the lack of provision authorizing a jury trial under the Act means that the Legislature did not intend to create such a right." Sailor, supra, 355 N.J. Super. at 322.

The Constitution does not guarantee a trial by jury for a statutory claim that was unknown to the common law. See Shaner, supra, 116 N.J. at 447. In such cases, when the Legislature statutorily guarantees a trial by jury, it adopts a right in derogation of the common law. We generally strictly construe statutes in derogation of the common law. See, e.g., White v. Twp. of N. Bergen, 77 N.J. 538, 559 (1978) ("A strict construction of a statute in derogation of the common law

---

(continued)
statutorily-created PIP benefits); Van Dissel v. Jersey Cent. Power & Light Co., 181 N.J. Super. 516 (App. Div. 1981) (finding no jury trial right in inverse condemnation action), certif. denied, 89 N.J. 409 (1982), cert. granted and vacated on other grounds, 465 U.S. 1001, 104 S. Ct. 989, 79 L. Ed. 2d 224 (1984); Peterson v. Albano, 158 N.J. Super. 503 (App. Div.) (denying jury trial right in summary dispossess action), certif. denied, 78 N.J. 337 (1978); State v. Tenriero, 183 N.J. Super. 519 (Law Div. 1981) (finding no right to jury trial for gambling offenses under statute giving jurisdiction to Superior Court); Quinchia v. Waddington, 166 N.J. Super. 247, 249 (Law Div. 1979) (finding no jury trial right in action to recover from Unsatisfied Claim and Judgment Fund); Kugler v. Banner Pontiac—Buick, Opel, Inc., 120 N.J. Super. 572, 582 (Ch. Div. 1972) (finding no right to jury trial for CFA action by Attorney General).

requires that the legislative intent be clearly and plainly expressed in order to effectuate a change."). Therefore, we should be reluctant to find an implied right to a jury trial, if the right is not already protected by the Constitution.[4]

In Shaner, the Court also engaged in a two-step analysis, first finding that no right to a jury trial was implied by the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, nor was the right grounded in the Constitution. Shaner, supra, 116 N.J. at 455.[5] With respect to an implied right, the Court examined the evil that the LAD was intended to address; the structure of the statute, which authorized administrative and judicial actions by both the State and private litigants; and the remedies available to different parties in the different forums. The Court concluded that the generally equitable nature of the relief authorized was inconsistent with a finding of an implied right to a jury trial. Id. at 445-46.

---

[4] We recognize that the IFPA is also a remedial statute, which we liberally construe. Land, supra, 186 N.J. at 173 (stating "we must construe the Act's provisions liberally to accomplish the Legislature's broad remedial goals."). However, as we discuss below, a jury trial mandate would not necessarily further the remedial goals of the Act. Therefore, regarding the jury trial issue, the limiting canon of statutory interpretation, dealing with statutes in derogation of the common law, would prevail over the expansive canon, addressing remedial statutes.

[5] The Legislature subsequently amended the LAD to provide a right to a jury trial. L. 1990, c. 12, § 2 (codified as amended at N.J.S.A. 10:5-13).

Following Shaner, supra, we found no right to a jury trial in Sailor. In Sailor, supra, the Commissioner brought a civil action pursuant to N.J.S.A. 17:33A-5a, seeking civil penalties, costs, fees, and restitution of $13,000 to the affected insurer, Allstate.[6] We relied on the Legislature's silence on the issue of a jury trial right. We noted the Legislature knows how to require a jury trial, but did not expressly require one in the Act. 355 N.J. Super. at 322. We concluded on that basis there was no statutory right. Ibid.

Applying these principles, we conclude there is no statutorily implied right to a jury trial in an insurer's action under N.J.S.A. 17:33A-7, where none is expressly provided. Although the Legislature's silence is not dispositive, it is a significant factor weighing against the finding of a statutorily implied right. As noted above, we should be reluctant to infer statutory provisions of law when the Legislature has not seen fit to expressly include them.

The structure of the Act, and the remedies provided also do not clearly compel the conclusion that the Legislature

---

[6] The court did not address the basis for the Commissioner seeking restitution in a civil action, as the Act appears to authorize the Commissioner to seek only penalties, court costs and attorney's fees in a civil action; and to authorize pursuit of restitution only in an administrative order. Compare N.J.S.A. 17:33A-5b (civil actions), with N.J.S.A. 17:33A-5c (administrative orders).

contemplated jury trials. First, the Act has expressly authorized, since 1997, the Commissioner's resort to an administrative forum where jury trials are precluded. We recognize defendants' argument that the implied jury trial right pertains only to an insurer's action for damages. However, the Act permits the Commissioner to issue restitutionary orders — to restore any losses to an insurer, which may only be challenged before the OAL, and then in a summary proceeding, which precludes a jury.

We also attach significance to the Act's explicit designation of the court as the finder of fact regarding the presence of a pattern of violations, a prerequisite to imposing treble damages. Had the Legislature intended parties to be entitled to a jury, it would not have carved out this critical fact issue for the court's determination.

Although we discuss at greater length in our constitutional analysis the nature of the cause of action and relief, we reject defendants' argument that the Legislature must have contemplated jury trials because an insurer's civil action under the Act is grounded in legal fraud-like claims, and an insurer seeks monetary compensatory damages. Defendants argue these are analogous to a claim at common law of legal fraud for which a jury right attaches. Suffice it to say here the analogy is too

weak to support a finding of an implied statutory right. As we discussed, a violation may fall far short of legal fraud. Also, although an insurer is entitled to seek "compensatory damages," the Commissioner may seek "restitution" of an insurer's losses. A general purpose of the statute is also expressly restitutionary in nature. N.J.S.A. 17:33A-2. Restitution is an inherently equitable form of relief. Sailor, supra, 355 N.J. Super. at 323-24 (citing Wanaque Borough Sewerage Auth. v. Twp. of W. Milford, 144 N.J. 564, 575 (1996)).

Nor does the broader intent of the Act, or its Legislative history compel a finding of an implied jury trial right. The Act is expressly intended to "confront aggressively the problem of insurance fraud . . . by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims." N.J.S.A. 17:33A-2. The Legislature's apparent goal to create a swift and cost-effective remedy is evident in the 1997 amendments, which authorized non-jury administrative actions. Although trial by jury holds a position of high regard in our system of justice, Lyn-Anna Props. v. Harborview Dev. Corp., 145 N.J. 313, 332-33 (1996), speed and efficiency are usually not

included among its many strengths.  See Shaner, supra, 116 N.J. at 442 (noting the "attendant delays" of jury trials).

Finally, we are not persuaded that Zorba compels a different result.  We need not address whether we agree with the panel's statutory analysis of the CFA.  Although the court in Zorba expressly avoided a constitutional analysis, finding instead a jury right was implied by that statute, the Supreme Court recently re-interpreted the holding as based on the constitutional right to a jury.  In JCP&L, supra, the Court noted that the panel in Zorba "inferred that a jury trial right should attach."  212 N.J. at 592 (citing Zorba, supra, 362 N.J. Super. at 137).  However, after describing the panel's analysis of the bases for, and nature of, CFA relief, the Court characterized the holding as constitutionally grounded.  "For those reasons the Appellate Division concluded that a trial by jury constitutionally was required for this common-law fraud-based cause of action."  JCP&L, supra, 212 N.J. at 593 (emphasis added) (citing Zorba, supra, 362 N.J. Super. at 140).

We also decline to apply Zorba because of distinctions between the CFA and the Act.  The Zorba panel likened treble damages, available under the CFA, to punitive damages; they, along with compensatory damages and attorney's fees were the "hallmark of a legal action."  Zorba, supra, 362 N.J. Super. at

138. However, unlike the Act, the CFA does not assign to the court the task of finding the predicate fact for awarding treble damages. Compare N.J.S.A. 56:8-19 (stating, under the CFA, the court shall award threefold the compensatory damages sustained, without stating who shall determine the quantum of damages), with N.J.S.A. 17:33A-7b (stating, under the Act, the court shall determine whether there is a pattern of violations, and then shall award treble the damages sustained, which includes investigative costs and attorney's fees).

Moreover, the Zorba panel did not address the tension between inferring a jury trial right, and authorizing the administrative award of restitution. Compare N.J.S.A. 56:8-15 (stating Attorney General may seek restoration to a "person in interest" of "moneys or property . . . acquired by means of an unlawful practice"), with N.J.S.A. 17:33A-5c (stating Commissioner may seek restitution of insurer's losses).

In sum, we find no statutorily implied right to a jury trial in the Act.

### D.

We therefore consider whether — despite the legislative silence — the right to a jury is guaranteed by the Constitution, which states that "right of trial by jury shall remain inviolate." N.J. Const., art I, ¶ 9. "It is well-established

that this protection applies to civil cases only where the right to a jury trial existed at common law and does not normally apply to cases in equity." JCP&L, supra, 212 N.J. at 589 (citation omitted). "'Only those actions that triggered the right of a jury trial that predated our State Constitutions, and those that were created anew with enactment of New Jersey's 1776 Constitution, the 1844 Constitution, or the 1947 Constitution serve as the basis for that constitutional right today.'" Ibid. (quoting Ins. Co. of N. Am. v. Anthony Amadei Sand & Gravel Co., 162 N.J. 168, 175-76 (1999)). "Generally, the New Jersey Constitution protects the right of trial by jury in legal, but not equitable, actions." Ins. Co. of N. Am., supra, 162 N.J. at 176.

In determining whether a right to a jury trial attaches to a statutory action, a court must apply a historical analysis. "When determining if a jury trial is required under the State Constitution, both the historical basis of the cause of action and the relief sought must be considered. The remedy sought 'remains the most persuasive factor.'" JCP&L, supra, 212 N.J. at 589 (citation omitted) (quoting Weinisch v. Sawyer, 123 N.J. 333, 344 (1991)). However, the mere availability of monetary relief is not decisive. Shaner, supra, 116 N.J. at 451. The Court has considered whether, despite the availability of

compensatory monetary damages, other forms of available relief are equitable in nature. Weinisch, supra, 123 N.J. at 344-45; Shaner, supra, 116 N.J. at 453 (noting forms of relief under LAD are "predominantly equitable in nature").

The Court may also consider whether the statute is "distinctively oriented to the achievement of . . . broad objectives" that go beyond the remedy of an individual wrong. Shaner, supra, 116 N.J. at 453. The Court has "eschewed a focus solely on the remedy sought and [has] espoused a more eclectic view of the standards that serve to characterize the essential nature of a cause of action in giving meaning and scope to the right to a jury trial" under the Constitution. Id. at 450.

The Court "consider[s] the nature of the underlying controversy as well as the remedial relief sought in determining whether the cause of action has been historically primarily equitable or legal in nature." Id. at 450-51. "[W]here actions created by statute have distinctive features with respect to substantive and procedural standards that would render them virtually unknown to the common law, there is no right to jury trial." Shaner, supra, 116 N.J. at 451.

Consistent with this approach, we have held there is no constitutional jury trial right under the New Jersey Antitrust Act, N.J.S.A. 56:9-1 to -19, although both money damages and

26                                                          A-5684-11T4

injunctive relief are available remedies. Boardwalk Props., Inc. v. BPHC Acquisition, Inc., 253 N.J. Super. 515, 529-30 (App. Div. 1991). Viewing the remedies available to the Attorney General, together with those available to private litigants, we concluded the remedies were "predominantly equitable." Id. at 530. We also gave weight to the broad purpose of the statute. "While a private litigant may financially gain from a suit under the statute, the overriding purpose of the Act is to advance the public policy in favor of competition." Ibid. Finally, we noted the statute's "'distinctive features . . . virtually unknown to the common law[.]'" Ibid. (quoting Shaner, supra, 116 N.J. at 451).

Applying these principles, we find no constitutional right to a trial by jury under the Act. Focusing first on the individual relief, an insurer-plaintiff may recover not only money damages if incurred, but also attorney's fees and costs of investigation, regardless of whether it suffered damage. The recovery of attorney's fees and costs is equitable in nature. See Shaner, supra, 116 N.J. at 451 ("[E]ven though plaintiff contends that he seeks only monetary relief, he claims attorney's fees, a distinctive statutory and equitable form of compensation.").

Moreover, the monetary relief available to an insurer — although denominated as compensatory damages in N.J.S.A. 17:33A-7a — is in the nature of restitution. Plaintiffs seek the refund of wrongfully paid PIP benefits; they seek no further consequential damages. As we have noted, restitution is an equitable remedy. See Shaner, supra, 116 N.J. at 444 n.1 (stating that "not all monetary relief is legal relief but may be considered equitable relief if it is discretionary and considered a form of restitution rather than damages" (citation omitted)); Ramirez v. Autosport, 88 N.J. 277, 288 (1982) (referring to the "equitable doctrine of restitution the purpose of which is to restore plaintiff to as good a position as he occupied before the contract"); Sailor, supra, 355 N.J. Super. at 323; Kugler, supra, 120 N.J. Super. at 581 (noting that remedies under CFA "are injunction, restitution and appointment of a receiver, all clearly equitable in nature").

The nature of the cause of action is significantly different from legal fraud. A private action under the Act — which does not require proof of scienter — is more akin to equitable fraud, to which no jury trial right attaches. See Weintraub v. Krobatsch, 64 N.J. 445, 455 (1974) (stating that claim seeking rescission based on equitable fraud is for the trial judge, not a jury). However, even elements of equitable

fraud — proof of reasonable reliance and damage — are jettisoned by the Act. In sum, the cause of action has "'distinctive features . . . virtually unknown to the common law[.]" <u>Shaner</u>, <u>supra</u>, 116 <u>N.J.</u> at 451.

The Act's broad public policy objectives also support our conclusion. The Act enlists insurers in the fight against insurance fraud. The Act requires insurers to develop plans to combat insurance fraud and threatens insurers with sanctions if they do not comply. <u>N.J.S.A.</u> 17:33A-15c. The Legislature was motivated in significant part by the goal of controlling the cost of insurance for insurance consumers generally. The Legislature concluded that undeserved and wrongfully obtained insurance or benefits imposed a significant cost upon insurers which they passed on to other consumers in their rate-setting process. <u>N.J.S.A.</u> 17:33A-2. Like the broad public policy goals of the LAD and the Antitrust Act, the Act's general purpose to combat fraud and control insurance rates supports the conclusion that defendants have no constitutional right to a jury trial.

In sum, we discern no constitutional right to a trial by jury for private claims under the Act.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5684-11T4